**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**CHRISTINE HECKENLAIBLE,**

       **Plaintiff,**

    **v.**                              **ACTION NO. 4:06cv25**

**VIRGINIA PENINSULA REGIONAL
JAIL AUTHORITY, and
MICHAEL D. STEELE,**

      **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Christine Heckenlaible brings this civil action against Defendant Michael D. Steele ("Steele") and his former employer, Defendant Virginia Peninsula Regional Jail Authority ("the Jail Authority"), seeking to recover monetary relief for injuries suffered as a result of an allegedly nonconsensual sexual encounter between her and Steele that occurred at a jail facility operated by the Jail Authority.  This matter comes before the court on the Jail Authority's motion for summary judgment.  For the reasons set forth herein, the Jail Authority's motion for summary judgment is **DENIED-IN-PART** and **GRANTED-IN-PART**.

## I.  Factual and Procedural History[1]

On April 23, 2001, the Jail Authority hired Steele to work as a correctional officer at the Virginia Peninsula Regional Jail ("the Jail").   Before doing so, the Jail Authority reviewed Steele's employment application, completed a criminal background check, conducted a personal interview, and checked Steele's personal references.   Steele had no criminal record at that time, and none of the information gathered by the Jail Authority indicated that Steele might pose a threat to inmates while working as a correctional officer.

Steele completed a three-week orientation program after being hired.   Once he was assigned to a shift, he received additional training in the field for several weeks.   He was subsequently sent to the Hampton Roads Criminal Justice Academy for an additional ten weeks of instruction.   In addition, while Steele worked on shifts at the Jail, supervisors employed by the Jail Authority patrolled the Jail at random, unannounced intervals and checked that Steele and the other correctional officers were following the Jail Authority's policies.   Two of these "spot checks" were conducted over the course of a correctional officer's twelve-hour shift.

---

[1]In reviewing a motion for summary judgment, this court must view the facts in the light most favorable to the non-moving party. Lee v. York County Sch. Div., No. 06-1363, slip. op. at 8 (4th Cir. May 2, 2007); Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418 (4th Cir. 2004); Blankenship v. Virginia, 432 F. Supp. 2d 607, 611 (E.D. Va. 2006).   Thus, the facts are presented in the light most favorable to Heckenlaible.

On or about January 15, 2004, Heckenlaible was admitted to the Jail as a pretrial detainee.  Upon her admission, she indicated that she was under the influence of alcohol and drugs, suffered from epilepsy, had respiratory problems, and had previously tried to harm herself.  The Jail Authority's staff subsequently determined that she had louse eggs in her hair.  She was placed in the medical unit of the jail, primarily because of the louse eggs.

Between 7:00 p.m. on January 20, 2004, and 7:00 a.m. on January 21, 2004, Steele worked as the sole correctional officer in the medical unit.  His supervisor conducted two "spot checks" during the first few hours of his shift, leaving him unsupervised for the remainder of it.  During the evening of January 20, 2004, Heckenlaible asked Steele on at least two occasions if she could take a shower.  At some point that evening, at least one or two hours after her initial request, Steele escorted her to the shower.

The Jail Authority encourages inmates in the medical unit to take showers.  It requires correctional officers to check on the inmates while they are showering, but prohibits the correctional officers from "ogling" the inmates.  In this case, Heckenlaible observed Steele staring at her while she was in the shower.  After she finished her shower and dried off, Steele took her back to her cell and then departed.

Later that same evening, Steele returned to Heckenlaible's cell and announced that he would be conducting a cell search.

3

After entering her cell, he sexually assaulted her, forcing her to perform oral sex on him.   After he left her cell, she cleaned herself off with a towel, which she then placed under her bed.   She cried herself to sleep.

The next morning, on January 21, 2004, Heckenlaible reported the sexual assault to a member of the Jail Authority's supervisory staff, and Steele was placed on administrative leave this same day. The towel was subsequently recovered, and a forensic analysis of it verified the presence of semen.   On March 30, 2004, Steele was terminated for the following two reasons: (1) Steele engaged in sexual contact with an inmate; and (2) Steele refused to cooperate in the Jail Authority's investigation of the incident.   Steele was eventually convicted for this offense of carnal knowledge of an inmate, a Class 6 felony under Virginia law, of which consent, or lack thereof, is not a relevant consideration for conviction.   He remains incarcerated as of the date of this Memorandum Opinion and Order.

As a result of the sexual assault, Heckenlaible is depressed. Also, her sleep is disturbed, she is scared to leave her home alone, and she avoids engaging in sexual activity, which has strained one of her personal relationships.   Her children see her crying all of the time.

Prior to January 21, 2004, the Jail Authority had never received any complaints about Steele from any of the Jail's

4

inmates.  In addition, it had never before received a complaint alleging that one of its correctional officers had sexually assaulted an inmate.  The Jail Authority has policies that govern interactions between correctional officers and inmates, and these policies were in effect on January 20, 2004.  The Jail Authority, for example, prohibits correctional officers from physically abusing any inmate or engaging in consensual or nonconsensual sexual acts with any inmate.  Also, the Jail Authority has a policy that in the absence of an emergency situation, a male correctional officer may not search the cell of a female inmate unless the officer is accompanied by a female correctional officer.

On or about January 18, 2006, Heckenlaible filed this action in the Williamsburg/James City County Circuit Court against Steele and the Jail Authority.  In her complaint, Heckenlaible alleges the following state law claims against Steele and, on the theory of respondeat superior, the Jail Authority: (1) assault and battery; and (2) intentional infliction of emotional distress.  She also brings state law negligent hiring and negligent retention claims against the Jail Authority.  In addition, she sets forth a state law negligence claim against both Steele and the Jail Authority based on the fact that Steele and the Jail Authority caused Steele to be the only correctional officer in a ward that housed female inmates.  Finally, she asserts a claim under 42 U.S.C. § 1983 against Steele, alleging that his actions deprived her of her

Fourteenth Amendment substantive due process right to bodily security.  See Hall v. Tawney, 621 F.2d 607, 612-13 (4th Cir. 1980) (discussing the constitutionally protected substantive due process right to bodily security and noting that "[t]he existence of this right to ultimate bodily security the most fundamental aspect of personal privacy is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process").  Heckenlaible further seeks punitive damages against Steele, claiming that his conduct was willful and wanton.

On February 1, 2006, the Jail Authority removed this action to this court.  On February 16, 2006, it filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On August 3, 2006, this court issued a Memorandum Opinion and Order denying the motion to dismiss.  See Heckenlaible v. Virginia Reg'l Peninsula Jail Auth., No. 4:06cv25, 2006 WL 2252026, at *2 (E.D. Va. Aug. 3, 2006).  On August 29, 2006, the Jail Authority filed a motion for reconsideration, asking this court to reconsider certain issues raised in its motion to dismiss.  On November 1, 2006, the court issued an Order denying the motion for reconsideration.  See Heckenlaible v. Virginia Reg'l Peninsula Jail Auth., No. 4:06cv25, 2006 WL 3196750, at *1 (E.D. Va. Nov. 1, 2006).

On May 8, 2007, the Jail Authority filed a motion for summary judgment, and the court received the Jail Authority's brief in

support of the motion on this same day.  In its brief, the Jail Authority argues that it is entitled to judgment as a matter of law on every claim pending against it in this action.  The court received Heckenlaible's memorandum in opposition to the motion for summary judgment ("memorandum in opposition") on May 24, 2007.  On this same date, the Jail Authority filed a motion to strike the memorandum in opposition, with a supporting brief, and also a reply brief in support of its motion for summary judgment.  On May 25, 2007, the Jail Authority withdrew a portion of its motion to strike, namely, the portion in which it argued that Heckenlaible's memorandum exceeded the page limits of the local rules.  On June 7, 2007, the court received Heckenlaible's late opposition to the motion to strike.  The matter is now ripe for review.

## II.  Standard of Review

"Summary judgment is warranted when the admissible evidence forecasted by the parties demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Toll Bros., Inc. v. Dryvit Sys., Inc., 432 F.3d 564, 568 (4th Cir. 2005) (internal quotation omitted); see Fed. R. Civ. P. 56(c).  To avert summary judgment, "the non-moving party must present sufficient evidence such that 'reasonable jurors could find by a preponderance of the evidence' for the non-movant." Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995) (quoting Anderson v. Liberty Lobby,

<u>Inc.</u>, 477 U.S. 242, 252 (1986)).

## III.  Analysis

### A.  Motion to Strike

In its motion to strike, the Jail Authority correctly notes that six of the exhibits attached to Heckenlaible's memorandum in opposition to the motion for summary judgment are inadmissible because they constitute hearsay or for other reasons.  Although Heckenlaible attached these inadmissible exhibits to her memorandum in opposition, she relied primarily on other evidence in explaining why it is inappropriate for this court to grant summary judgment in favor of the Jail Authority.  Accordingly, the court declines to strike Heckenlaible's memorandum in opposition in its entirety, and the Jail Authority's motion to strike is **DENIED**.  The court notes, however, that in determining whether the Jail Authority is entitled to summary judgment, the court has only considered the "admissible evidence forecasted by the parties."  <u>Toll Bros.</u>, 432 F.3d at 568.[2]

### B.  Respondeat Superior Liability for Intentional Torts

In her complaint, Heckenlaible alleges that the Jail Authority is liable under the theory of <u>respondeat</u> <u>superior</u> for the following intentional torts that were committed by Steele: (1) assault and

---

[2]The court notes that four of the six exhibits in question were ruled inadmissible at the final pretrial conference on May 22, 2007.  Only one of the other two exhibits is relied on by Heckenlaible in her memorandum in opposition.  For a discussion of the admissibility and probative value of this exhibit, see <u>infra</u> note 5.

battery; and (2) intentional infliction of emotional distress. The Jail Authority urges the court to rule as a matter of law that it cannot be held liable under the theory of <u>respondeat superior</u>. Heckenlaible, in turn, contends that this is an issue for the jury to resolve.

Under the doctrine of <u>respondeat superior</u>, "an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed." <u>Plummer v. Ctr. Psychiatrists, Ltd.</u>, 252 Va. 233, 235, 476 S.E.2d 172, 173 (1996). By establishing the existence of an employment relationship, the plaintiff creates a rebuttable presumption of the employer's liability. <u>Gina Chin & Assocs., Inc. v. First Union Bank</u>, 260 Va. 533, 542, 537 S.E.2d 573, 577 (2000). Thus, once the plaintiff establishes the existence of an employer-employee relationship, the employer has the burden to prove that the employee was not acting within the scope of his or her employment when the tortious act was committed. <u>Id.</u> at 542, 537 S.E.2d at 577-78. If the evidence leaves the question in doubt, the issue is for the jury to resolve. <u>Id.</u> at 542, 537 S.E.2d at 578.

The Supreme Court of Virginia has acknowledged that determining in any given case whether an employee's wrongful act was within the scope of employment has proved "vexatious." <u>Id.</u> at 540-41, 537 S.E.2d at 576-77. Virginia courts define the term

9

"scope of employment" as follows:

> Generally, an act is within the scope of the employment if (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, "and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account."

Kensington Assocs. v. West, 234 Va. 430, 432, 362 S.E.2d 900, 901 (1987) (alteration in original) (citation omitted).  However, "a narrow and literal reading of the language in this definition, which would create a patent conflict within it, is not to be applied as a matter of law to the facts of a particular case." Gina Chin & Assocs., 260 Va. at 541, 537 S.E.2d at 577.  For example, the proper application of the definition "does not resolve into a simplistic determination that an employee's willful and wrongful act was not done with the intent to further the employer's interest or to benefit the employer in some way."  Id. at 542, 537 S.E.2d at 577.  Also, an employer need not impliedly or expressly direct the wrongful act, and a jury issue may exist as to whether an employee's wrongful act occurred within the scope of employment notwithstanding the fact that the employee's act violated an employer's rules or directives.  Id. at 544, 537 S.E.2d at 579. Ultimately, the issue for the court to resolve is "'whether the service itself, in which the tortious act was done, was within the ordinary course of [the employer's] business.'"  Id. at 543, 537

S.E.2d at 578 (quoting Davis v. Merrill, 133 Va. 69, 78, 112 S.E. 628, 631 (1922)); see Blair v. Defender Servs., Inc., 386 F.3d 623, 627 (4th Cir. 2004) (noting that this is the proper test for resolving the scope of employment issue); see also Jones v. Tyson Foods, Inc., 378 F. Supp. 2d 705, 713 (E.D. Va. 2004) (explaining that "courts must determine whether the activity that gave rise to the tortious act was within the scope of employment, i.e. within the ordinary course of the employer's business").

In Blair, the Fourth Circuit applied Virginia law in considering whether the plaintiff, a university student, could hold an employer that provided custodial services to the university liable under the theory of respondeat superior for a physical assault that was committed by one of its employees on the university's campus. 386 F.3d at 624-26. The court noted that even when the facts were viewed in the light most favorable to the plaintiff, it was clear that the physical assault "had nothing to do with [the employee's] performance of janitorial services." Id. at 627. It reasoned that "the simple fact that an employee is at a particular location at a specific time as a result of his employment is not sufficient to impose respondeat superior liability on the employer." Id. The court, therefore, affirmed the district court's decision to grant judgment as a matter of law to the employer on the plaintiff's respondeat superior claim. Id. at 628.

Similarly, in Jones, another division of this court applied Virginia law in deciding whether an employer could be held liable under the theory of respondeat superior for acts of sexual harassment committed by a supervisor against an employee. 378 F. Supp. 2d at 713-14. The supervisor allegedly summoned the employee to his office, closed the door, asked her on a date, asked to kiss her, and also touched her. Id. at 714. The court noted that although the sexual harassment occurred in the workplace, it did not occur while the supervisor was engaged in his workplace duties or functions. Id. It thus held that the plaintiff could not hold the employer liable under the theory of respondeat superior. Id.

Importantly, the circumstances present in Blair and Jones are distinguishable from circumstances where an employee's wrongful conduct is "related to the nature of the employment." Blair, 386 F.3d at 628; see Jones, 378 F. Supp. 2d at 713 (noting that respondeat superior liability may be imposed where a supervisor commits a wrongful act while "engaged in workplace duties or functions"). For example, in Gulf Underwriters Insurance Co. v. KSI Services, Inc., 416 F. Supp. 2d 417 (E.D. Va. 2006), another division of this court applied Virginia law in considering whether a bookkeeper acted within the scope of employment when she embezzled money. Id. at 423-24. In answering this question in the affirmative, the court reasoned that the bookkeeper could not have committed the acts in question without the "facilities and

attributes of her office as bookkeeper" and that she had thus "used the access and authority inherent in her office to accomplish her embezzlement scheme." Id.

As a further example, in Plummer, the Supreme Court of Virginia considered whether an employer could be held liable under the theory of respondeat superior for the acts of a psychologist who allegedly overcame the will of a patient and had a sexual encounter with her. 252 Va. at 234-35, 476 S.E.2d at 173. The case was decided on demurrer based on the sufficiency of the factual allegations set forth in the plaintiff's motion for judgment. Id. at 234, 476 S.E.2d at 173. For the following reasons, the court concluded that the trial court erred in holding, as a matter of law, that the psychologist was acting outside the scope of his employment when the tortious act occurred: (1) the psychologist's act was allegedly committed while "he was performing his duties as a psychologist in the execution of the services for which he was employed, in this instance, counseling and therapy"; and (2) the psychologist's education, experience, and knowledge of the plaintiff allegedly enabled him to commit the wrongful act. Id. at 237-38, 476 S.E.2d at 174-75.[3]

_____

[3]The Jail Authority correctly notes that this case was decided based on the sufficiency of the allegations in the plaintiff's motion for judgment, rather than at the summary judgment stage. Def.'s Br. in Supp. of Mot. for Summ. J. at 14. Nevertheless, the reasoning of the court in Plummer illustrates the principle that although an employer may not be held liable under the theory of respondeat superior merely because an employee was at a particular

Additionally, the United States District Court for the Western District of Virginia applied Virginia law and denied summary judgment on the issue of respondeat superior liability where a plaintiff alleged the following facts: (1) an employer's managers committed wrongful acts of sexual harassment; (2) these acts may have occurred while the managers were performing their employment duties; and (3) part of the efficacy of the acts was "derived" from their employment duties. Young v. Sheetz, Inc., 987 F. Supp. 496, 504 (W.D. Va. 1997). As a final example, in Doyle-Penne v. Muhammad, No. 99-2101, 2000 WL 1086906 (4th Cir. Aug. 4, 2000), the Fourth Circuit considered whether a workplace altercation between two federal employees occurred within the scope of employment. Id. at *1. The altercation occurred after the plaintiff objected to the curt manner in which one of her coworkers transferred a telephone call to her. Id. An argument ensued and the coworker ultimately pinned the plaintiff against the wall and punched her repeatedly. Id. In affirming the district court's conclusion that the altercation occurred within the scope of employment, the Fourth Circuit reasoned that transferring telephone calls was part of the coworker's job and that the dispute, therefore, arose out of the coworker's performance of her duties. Id. at *2.

---

place at a particular time as a result of his or her employment, the employer may be held liable where the employee's wrongful conduct was "related to the nature of the employment." Blair, 386 F.3d at 628.

Turning to the facts of the instant case, this court concludes that it is distinguishable from cases such as <u>Blair</u> and <u>Jones</u> because, viewing the facts in the light most favorable to Heckenlaible, this was not a case where a wrongful act occurred in the workplace merely because an employee was in a particular location at a particular time as a result of his employment. Steele's duties as a correctional officer required him to observe inmates in the shower, and the alleged sexual assault occurred after he observed Heckenlaible showering and during a "cell search" thereafter.   Steele's impulse to have sexual contact with Heckenlaible may well have arisen, at least in part, from the fact that he was required to view Heckenlaible while she was unclothed in the shower.  In light of these circumstances, a reasonable juror could conclude that the alleged sexual assault arose out of Steele's performance of his duties.  <u>See</u> <u>Doyle-Penne</u>, 2000 WL 1086906, at *1-2 (holding that a physical altercation between employees occurred within the scope of employment because it arose out of the performance of job duties).

Moreover, viewing the facts in the light most favorable to Heckenlaible, Steele was actively engaged in the performance of his job duties, which included supervising Heckenlaible and the other inmates in the medical unit, when the wrongful act occurred. Steele was supervising Heckenlaible when he accompanied her to the shower, looked at her while she showered, and returned her to her

15

cell afterwards.  In addition, he ultimately entered her cell on the pretense of conducting a cell search, and cell searches are also among the duties of a correctional officer.  It follows that a reasonable juror could conclude that when the wrongful act occurred, Steele was engaged in a service, namely, the supervision of Heckenlaible, that was within the ordinary course of the Jail Authority's business.  See Gina Chin & Assocs., 260 Va. at 543, 537 S.E.2d at 578 (explaining that the ultimate issue for the court to resolve in determining whether an act was within the scope of employment is "'whether the service itself, in which the tortious act was done, was within the ordinary course of such business'" (quoting Davis, 133 Va. at 78, 112 S.E. at 631)).  A reasonable juror could reach this conclusion notwithstanding the fact that Steele violated the Jail Authority's policies when he had a sexual encounter with Heckenlaible.  See id. at 544, 537 S.E.2d at 579.

Furthermore, the instant case reflects a situation where special circumstances related to employment facilitated the alleged intentional tort.  Steele could not have reached Heckenlaible within the confines of her cell were it not for his employment with the Jail Authority.  Also, in announcing that he was entering her cell to conduct a search, Steele arguably used the authority of his office to accomplish the wrongful act.  Such facts weigh strongly against resolving the scope of employment issue, as a matter of law, in favor of the Jail Authority.  See Gulf Underwriters, 416 F.

16

Supp. 2d at 423-24.  In sum, having carefully reviewed the relevant case law and studied the arguments set forth by the parties, this court concludes, for the several reasons discussed above, that whether Steele was acting within the scope of his employment when he allegedly assaulted Heckenlaible is an issue for the jury to resolve.

## C.  Intentional Infliction Of Emotional Distress

Under Virginia law, a plaintiff alleging a claim of intentional infliction of emotional distress must establish the following elements by clear and convincing evidence: "(1) the wrongdoer's conduct is intentional or reckless; (2) the conduct is outrageous and intolerable; (3) the wrongful conduct and the emotional distress are causally connected; and (4) the resulting distress is severe." McDermott v. Reynolds, 260 Va. 98, 101, 530 S.E.2d 902, 903 (2000).  With respect to the fourth element, the Supreme Court of Virginia has explained that emotional distress includes "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." Russo v. White, 241 Va. 23, 27, 400 S.E.2d 160, 163 (1991).  However, liability arises "only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." Id.

The Jail Authority argues that Heckenlaible has failed to

17

establish the fourth element by clear and convincing evidence.  It thus contends that even if a genuine issue of fact exists as to whether Steele was acting within the scope of his employment when he assaulted Heckenlaible, it is entitled to judgment as a matter of law on her intentional infliction of emotional distress claim. The Jail Authority explains that Heckenlaible's allegations that she is depressed, her sleep is disturbed, and she is scared to go out are insufficient to establish severe emotional distress.

It is undisputed that there was a sexual encounter between Heckenlaible and Steele.  The issues that will be the subject of dispute at trial are whether this encounter was consensual and whether Steele was acting within the scope of his employment when the sexual encounter occurred.  To find for Heckenlaible against the Jail Authority on her intentional infliction of emotional distress claim or her assault and battery claim, the jury would have to resolve both of these issues in Heckenlaible's favor.  If the jury were to do so, Heckenlaible could in all likelihood recover damages for the emotional injuries suffered as a result of the assault and battery, rendering her intentional infliction of emotional distress claim superfluous.[4]  Nevertheless, the fact that

---

[4]Under Virginia law, the general rule in tort cases is "that, absent proof of physical injury or wanton or willful conduct, there can be no recovery of damages for mental anguish, emotional distress, or humiliation." Sea-Land Serv., Inc. v. O'Neal, 224 Va. 343, 354, 297 S.E.2d 647, 653 (1982).  However, in cases involving intentional torts, recovery of damages for emotional suffering, such as humiliation and embarrassment, is permissible.  Id.

an adequate remedy for emotional injuries is available to Heckenlaible through her assault and battery claim does not preclude her from simultaneously pursuing an intentional infliction of emotional distress claim. Speight v. Albano Cleaners, Inc., 21 F. Supp. 2d 560, 565 (E.D. Va. 1998). Thus, this court must address whether Heckenlaible has come forward with sufficient facts to establish severe distress.

In Russo, the Supreme Court of Virginia held that, without more, a plaintiff's allegations that "she was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work" were insufficient to establish severe emotional distress. 241 Va. at 28, 400 S.E.2d at 163. It explained that the plaintiff had not claimed "that she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income." Id. In light of this reasoning of the Supreme Court of Virginia, courts have required plaintiffs alleging intentional infliction of emotional distress to come forward with some objectively verifiable evidence to establish severe distress. See, e.g., Dixon v. Denny's, Inc., 957 F. Supp. 792, 796 (E.D. Va. 1996) (holding that allegations that the defendant's actions made the plaintiff "fearful and degraded, and that she suffered headaches and vomiting as a result of his behavior" were insufficient to establish severe distress

19

because the plaintiff "offered no objectively verifiable evidence—such as medical bills or even the testimony of friends or family—which corroborates her allegations of severe emotional distress").

Importantly, as this court explained in the Memorandum Opinion and Order of August 3, 2006, Virginia courts have held that the victim of a sexual assault "clearly experiences severe emotional distress that no reasonable person could be expected to endure." Hygh v. Geneva Enters., Inc., 47 Va. Cir. 569, 575 (1997); see Padilla v. Silver Diner, 63 Va. Cir. 50, 55 (2003) (explaining that Russo and its progeny dealt with emotional distress claims that were not accompanied by physical injury or physical impact); Hazzis v. Modjadidi, No. L05-1078, 2005 WL 3462257, at *3 (Va. Cir. Ct. Dec. 19, 2005) ("Cases dealing with elements of physical sexual harassment are distinguishable from cases like Russo where the allegations dealt only with non-tactile torts."). Accordingly, Heckenlaible's deposition testimony that she was the victim of a sexual assault is sufficient to avoid summary judgment on her intentional infliction of emotional distress claim. She need not come forward with objectively verifiable evidence of severe distress, if the jury believes her testimony about the effects of an 0intentional sexual assault on her by Steele.

## D. Negligent Hiring

The Supreme Court of Virginia has explained the tort of

negligent hiring as follows:

> Liability for negligent hiring is based upon an employer's failure to exercise reasonable care in placing an individual with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position in which, due to the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

Interim Pers. of Cent. Va., Inc. v. Messer, 263 Va. 435, 440, 559 S.E.2d 704, 707 (2002).  It has further explained that "proof of the failure to investigate a potential employee's background is not sufficient to establish the employer's liability.  Rather, the plaintiff must show that an employee's propensity to cause injury to others was either known or should have been discovered by reasonable investigation."  Majorana v. Crown Cent. Petroleum Corp., 260 Va. 521, 531, 539 S.E.2d 426, 431 (2000) (emphasis added).

In this case, it is undisputed that before hiring Steele, the Jail Authority reviewed Steele's employment application, completed a criminal background check, and conducted a personal interview. Heckenlaible nevertheless argues that the Jail Authority failed to conduct a reasonable investigation.  She explains that the Jail Authority neither subjected Steele to psychiatric or psychological testing nor made inquires into whether Steele had any proclivities for committing sexual assault or sexual abuse before hiring him.

Importantly, Heckenlaible has not come forward with evidence indicating that at the time the Jail Authority hired Steele, his

purported propensity to commit sexual assault was known or should have been discovered by reasonable investigation. There is no evidence before the court indicating that Steele was known by anyone to have a propensity to commit a sexual assault at the time he was hired as a correctional officer by the Jail Authority. Moreover, even assuming for the sake of argument that a reasonable investigation includes psychological or psychiatric testing, there is no evidence indicating that such testing would have revealed that Steele would pose a danger to inmates while working at the Jail. Accordingly, the Jail Authority is entitled to judgment as a matter of law on the negligent hiring claim. See Majorana, 260 Va. at 531, 539 S.E.2d at 431 (explaining that "the plaintiff must show that an employee's propensity to cause injury to others was either known or should have been discovered by reasonable investigation"); see also Se. Apartments Mgmt., Inc. v. Jackman, 257 Va. 256, 261, 513 S.E.2d 395, 398 (1999) (holding that a negligent hiring claim failed as a matter of law because "there are no facts that would have put the owner on notice that its hiring of [the employee] might reasonably lead to a pre-dawn assault on the tenant").

**E. Negligent Retention**

The tort of negligent retention is based on the principle that an employer is liable for "harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew

22

or should have known was dangerous and likely to harm [others]."
Id. at 260-61, 513 S.E.2d at 397.   In this case, there is no
evidence indicating that the Jail Authority knew or should have
known that Steele posed a danger to inmates prior to learning that
a sexual encounter had occurred between Steele and Heckenlaible.
For example, it is undisputed that the Jail Authority never
received any complaints from inmates about Steele.   Moreover, it is
undisputed that once it learned of the encounter, the Jail
Authority swiftly investigated the matter and took appropriate
action against Steele.   Accordingly, Heckenlaible's negligent
retention claim must fail as a matter of law.   See Barrett v.
Applied Radiant Energy Corp., 240 F.3d 262, 269 (4th Cir. 2001)
(granting summary judgment for the defendant on the plaintiff's
negligent retention claim where the employer had no actual or
constructive knowledge of the employee's prior misconduct, and the
employer took swift action against the employee once the misconduct
was discovered).[5]

---

[5]Heckenlaible alleges that the Jail Authority should have
known Steele was dangerous because he pressed a pen point into the
neck of an inmate and otherwise behaved inappropriately towards the
inmate on January 14, 2004.   This event allegedly occurred in a
visiting area of the Jail in front of the inmate's wife.   These
allegations, however, avail Heckenlaible nothing for two reasons.
First, there is no indication that the inmate reported this event
directly to the Jail Authority.   It appears that the Jail Authority
became aware of the incident two weeks after it occurred, when the
inmate filed a criminal complaint against Steele.   See Pl.'s Mem.
in Opp'n to Def.'s Mot. for Summ. J., Ex. 5; see also id., Ex. 4 at
58-60.   Thus, there is no evidence indicating that the Jail
Authority was aware of this event on or before January 20, 2004,

**F.   Other Negligence**

Heckenlaible also brings a negligence claim against Steele and the Jail Authority, alleging that they failed to exercise due care in providing for the safety and protection of Heckenlaible.  The Jail Authority has construed this claim as asserting liability against the Jail Authority not only for its own negligence, but also for Steele's negligence.  <u>See</u> Def.'s Br. in Supp. of Mot. for Summ. J. at 10, 18.  As discussed above, this court has concluded that a genuine issue of fact exists as to whether the Jail Authority may be held liable under the theory of <u>respondeat superior</u> for the acts of Steele.  <u>See</u> <u>supra</u> Part III.B.  Thus, the only issue that remains for the court to resolve with respect to Heckenlaible's negligence claim is whether the Jail Authority can

---

the date on which the events that form the basis for this lawsuit began to unfurl.  Moreover, as there is no evidence indicating that the Jail Authority received a complaint directly from the inmate, it is entirely unclear how the Jail Authority could have learned of the incident before the criminal complaint was filed.  Accordingly, the circumstances described by Heckenlaible fail, as a matter of law, to establish negligent retention.  <u>See</u> <u>Barrett</u>, 240 F.3d at 269.

Second, Heckenlaible has not forecasted admissible evidence that would prove the events in question occurred.  She has not, for example, come forward with an affidavit from the inmate or anyone else with personal knowledge of the events in question. Heckenlaible provides a copy of the criminal complaint filed by the inmate, but the criminal complaint is hearsay and would not qualify as a business record in light of the fact that the inmate prepared it.  <u>See</u> <u>Rowland v. Am. Gen. Fin., Inc.</u>, 340 F.3d 187, 194 (4th Cir. 2003) ("To qualify for the business records exception, the document must be prepared by someone acting 'in the course of a regularly conducted business activity.'" (quoting Fed. R. Evid. 803(6))).

be held liable for its own actions.

Under Virginia law, a plaintiff alleging a negligence claim has the burden to show "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003). Negligence is ordinarily a jury issue. Artrip v. E.E. Berry Equip. Co., 240 Va. 354, 357, 397 S.E.2d 821, 823 (1990). "Only when reasonable minds could not differ does the issue become one of law to be decided by a court." Id.; see Atrium Unit Owners, 266 Va. at 294, 585 S.E.2d at 548 (explaining that proximate causation "is generally a question of fact to be resolved by a jury").

At this juncture, the court reserves ruling on whether the Jail Authority is entitled to judgment as a matter of law on Heckenlaible's negligence claim until after the plaintiff has presented her case at the trial. Thus, the court **DENIES** summary judgment on Heckenlaible's negligence claim against the Jail Authority.[6]

---

[6]This court agrees with the reasoning in Doe v. Cunningham, No. 3:06-cv-00019, 2006 WL 2819600, at *2 (W.D. Va. Sept. 28, 2006) ("[T]he majority of men, and the majority of prison guards, are not rapists merely waiting for an opportunity to assault a woman"), which is cited by the Jail Authority. However, this statement was made in the context of addressing whether it was unconstitutional to leave a male prison guard alone with a female inmate, not whether it was negligent to do so. Id. Moreover, this reasoning does not necessarily compel the conclusion that misconduct of a sexual nature is not foreseeable when the operator of a prison facility assigns a male to be the sole correctional officer in an

## G.  Punitive Damages

     The Jail Authority argues that Heckenlaible cannot recover punitive damages against it, either for its own actions or for those of Steele.  It correctly explains that to recover punitive damages against the Jail Authority for its own actions, she must show that the Jail Authority committed acts that were willful and wanton.  Def.'s Br. in Supp. of Mot. for Summ. J. at 19 (citing Woods v. Mendez, 265 Va. 68, 76, 574 S.E.2d 263, 268 (2003)).  It also correctly explains that to recover punitive damages against the Jail Authority for the acts of Steele, Heckenlaible must show that the Jail Authority participated in, authorized, or ratified Steele's conduct.  Id. at 20 (citing Blakely v. Austin-Weston Ctr. for Cosmetic Surgery L.L.C., 348 F. Supp. 2d 673, 680 (E.D. Va. 2004)).

     In her complaint, Heckenlaible states that she is seeking punitive damages against Steele, individually, but does not state that she is seeking punitive damages against the Jail Authority.  Moreover, in her opposition to the instant motion for summary judgment, she acknowledges that she is not seeking punitive damages against the Jail Authority.  See Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 26.  Furthermore, there is no indication in the

---

area that houses female inmates, including some that might be particularly vulnerable to a sexual assault or other abuse due to mental or physical limitations, and which also requires the correctional officer to briefly observe the inmates while they shower.

record that the Jail Authority committed willful and wanton acts or participated in, authorized, or ratified the wrongful acts purportedly committed by Steele.   Accordingly, the court agrees with the Jail Authority that Heckenlaible may not recover punitive damages from it in this action.

## IV.   Conclusion

For the reasons set forth above, the Jail Authority's motion to strike is **DENIED** and its motion for summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART.**   Heckenlaible's negligent retention claim and her negligent hiring claim are **DISMISSED**.   The following claims remain pending against the Jail Authority on the theory of respondeat superior: (1) assault and battery; and (2) intentional infliction of emotional distress.   Heckenlaible's negligence claim also remains pending against the Jail Authority.[7]   The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for plaintiff and to counsel for defendants.

---

[7]Heckenlaible's state law claims of assault and battery, intentional infliction of emotional distress, and negligence remain pending against Steele.   Her claim under 42 U.S.C. § 1983 also remains pending against him.   While she seeks only compensatory damages against the Jail Authority, she seeks both compensatory damages and punitive damages against Steele.

**IT IS SO ORDERED.**

_____/s/_____
Rebecca Beach Smith
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

June 13, 2007